IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **I N D I C T M E N T** |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 1:19 CR 775 |
| v. | ) | |
| | ) | Title 18, United States Code, |
| STEPHEN BELLIPARIO, aka TONY, | ) | Sections 371, 1955, and 1956(h) |
| JOSEPH FOWLES, aka MATT, | ) | |
| AMIR HUGH ROBINSON, | ) | JUDGE GAUGHAN |
| ANTHONY PINIALIS, | ) | |
| CLINTON REIDER, | ) | |
| THOMAS REED, | ) | |
| JAMES OVENS, | ) | |
| MICHAEL TUTOLO, | ) | |
| MAUREY PRESSER, | ) | |
| ALAN BAMBIC, | ) | |
| RALPH ROBERTSON, | ) | |
| | ) | |
| Defendants. | ) | |

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

<u>The Defendants</u>

1.	Defendant STEPHEN BELLIPARIO, aka TONY ("BELLIPARIO"), primarily resided in New York State.

2.	Defendant JOSEPH FOWLES, aka MATT ("FOWLES"), primarily resided in Costa Rica.

3.	Defendant AMIR HUGH ROBINSON ("ROBINSON") resided in the Southern District of Florida.

4.	Defendant ANTHONY PINIALIS ("PINIALIS") resided in the District of Nevada.

5.  Defendants CLINTON REIDER ("REIDER"), THOMAS REED ("REED"), JAMES OVENS ("OVENS"), MICHAEL TUTOLO ("TUTOLO"), MAUREY PRESSER ("PRESSER"), ALAN BAMBIC ("BAMBIC"), and RALPH ROBERTSON ("ROBERTSON"), resided in the Northern District of Ohio, Eastern Division.

The PPH and Bookmaking Business Operation

6.  BELLIPARIO and FOWLES operated PremierPerHead.com ("PPH"), a gambling website based in Costa Rica. PPH operated as a pay per head service providing bookmakers in the Northern District of Ohio and elsewhere with access to an online gambling platform that their clients could use to place and track bets.

7.  Bookmaking involved an organization or person, known as a "bookmaker" or "bookie," who took bets on sporting events at agreed upon odds.

8.  Betting odds were skewed to attempt to ensure that the bookmaker made a profit.

9.  Bookmakers attempted to minimize risk by obtaining an equal amount of money wagered on each side of the wagering event by adjusting the odds in their favor or by having a point spread.

10.  By adjusting the odds or using a point spread, the bookmaker aimed to achieve a "balanced book."

11.  Bookmakers typically collected a percentage of each bet from each losing gambler as a commission known as the "vig."

12.  When a large bet came in, a bookmaker could also try to "lay off" the risk by buying bets on the other side from other bookmakers to minimize risk.  Bookmakers also could sell the large wager to another bookmaker.

13. Some bookmakers also split their winnings and losses with another bookmaker to minimize risk.

14. The object of bookmaking was to have equal bets on both sides of the game and the profit was in the "vig."

15. PPH provided bookmakers' customers with access to wagering odds and/or point spreads to place bets on sporting events.

16. PPH allowed bookmakers to pay a weekly fee per active client account, known as a "pay per head" fee, to provide access to the gambling website to their customers to solicit bets.

17. REIDER, OVENS, TUTOLO, REED, PRESSER, BAMBIC, and ROBERTSON, along with J.K. and R.D, persons known to the Grand Jury, operated as bookmakers in the Northern District of Ohio, Eastern Division.

18. The operation of a gambling and sports betting website business was a violation of the laws of the State of Ohio, to wit: O.R.C. 2915.02(A)(1) and (A)(3).

19. REIDER, OVENS, TUTOLO, REED, PRESSER, BAMBIC, ROBERTSON, along with J.K. and R.D, persons known to the Grand Jury, and other bookmakers in the Northern District of Ohio utilized PPH to track and control all bets of their gambling clients. Specifically, PPH allowed gambling clients to make bets on sporting events and other wagers via the website or by phone. PPH also tracked clients' winnings and losses and maintained a dollar balance of the bookmakers' client accounts.

20. REIDER, OVENS, TUTOLO, along with J.K. and R.D, persons known to the Grand Jury, paid for direct access to the PPH website.

21. REIDER collected money from his sub-agents for access to the website.

22. PRESSER, BAMBIC, and ROBERTSON, operated as sub-agents of REIDER.

23. Sub-agents were lower level bookmakers who had their own clients. Sub-agents paid REIDER an agreed upon percentage of the "vig" in exchange for the ability to use the website.

24. REED was partnered with REIDER and obtained access to the PPH website through REIDER.

25. REED and REIDER often laid off risk together by splitting a percentage of their clients' gambling winnings and losses.

The PPH Money Laundering Operation

26. The pay per head fees are paid to the PPH website through a variety of payment methods that include money orders, prepaid gift cards, MoneyGram, Western Union, PayPal, Bitcoin and cash payments.

27. ROBINSON and PINIALIS assisted in the laundering of proceeds from PPH.

28. Your Wine Cellars is an online alcohol retailer that is owned by ROBINSON.

COUNT 1
(Conspiracy to Operate an Illegal Gambling Business, 18 U.S.C. § 371)

The Grand Jury charges:

29. The allegations contained in paragraphs 1 – 28 are re-alleged and incorporated by reference in this count, as though fully restated herein.

30. From in or around January 2015, to in or around December 2019, the exact dates unknown to the Grand Jury, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendants STEPHEN BELLIPARIO, aka TONY, JOSEPH FOWLES, aka MATT, AMIR HUGH ROBINSON, ANTHONY PINIALIS, CLINTON REIDER, THOMAS REED, JAMES OVENS, MICHAEL TUTOLO, MAUREY PRESSER, ALAN BAMBIC, and RALPH ROBERTSON, did voluntarily and knowingly conspire, combine, confederate, and agree

together and with each other and with others, both known and unknown to the Grand Jury, including J.K. and R.D., to conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving sports betting, which gambling business was a violation of the laws of the State of Ohio, that is, O.R.C. 2915.02(A)(1) and (A)(3), which also involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of said illegal gambling business, and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of $2,000.00 in any single day, in violation of Title 18, United States Code, Section 1955.

## OBJECT OF THE CONSPIRACY

31. The object of the conspiracy was to enrich BELLIPARIO, FOWLES, ROBINSON, PINIALIS, REIDER, REED, J.K., R.D., OVENS, TUTOLO, PRESSER, BAMBIC, ROBERTSON, and others by permitting, facilitating, and causing bookmaking clients to place wagers and bets using the PPH websites in order to obtain fees for use of the website and to obtain a profit from gambling losses.

## MANNER AND MEANS OF THE CONSPIRACY

32. It was part of the conspiracy that:

    a. BELLIPARIO and FOWLES operated PPH.

    b. REIDER, J.K., R.D., OVENS, and TUTOLO paid PPH a fee per active client for their clients' access to the PPH websites in order to make wagers and bets on sporting events.

    c. REIDER, J.K., R.D., OVENS, TUTOLO, and other bookmakers paid PPH a fee per active client by money order, prepaid gift cards, MoneyGram, Western Union, PayPal, Bitcoin and cash payments.

5

    d.    BELLIPARIO met R.D. and others in the Northern District of Ohio, Eastern Division to collect cash payments for client access to the PPH website.

    e.    PINIALIS collected money orders sent to an address in Las Vegas, Nevada by bookmakers for payment of PPH fees.

    f.    PINIALIS deposited the money orders into a bank account in his name.

    g.    ROBINSON processed prepaid gift cards sent by bookmakers as payment for PPH fees, which resulted in deposits into his business bank account. ROBINSON later converted the deposits into Bitcoin in order to transfer the funds to the operators of the PPH website.

    h.    REIDER paid for access to PPH and set up accounts for both his clients and the clients of REED, PRESSER, BAMBIC, and ROBERTSON to make wagers and bets on sporting events through the PPH website.

    i.    REIDER and REED split a percentage of gambling winnings and losses related to their clients.

    j.    BELLIPARIO, FOWLES, and other employees of PPH, provided REIDER, J.K., R.D., OVENS, TUTOLO, and other bookmakers the usernames for their clients to place bets and wagers on the PPH website.

    k.    REIDER, J.K., R.D., OVENS, TUTOLO, REED, PRESSER, BAMBIC, ROBERTSON, and other bookmakers, provided their clients with the name and web address of the PPH website, a username, and a password to login to the PPH website.

    l.    The PPH website provided REIDER, J.K., R.D., OVENS, TUTOLO, REED, PRESSER, BAMBIC, ROBERTSON and other bookmakers' clients with sporting events, wagering odds and/or point spreads.

6

    m. The PPH website also tracked and processed REIDER, J.K., R.D., OVENS, TUTOLO, REED, PRESSER, BAMBIC, ROBERTSON and other bookmakers' client bets and wagers and maintained an electronic dollar figure balance for the amount due to or owed by the bookmaker.

    n. REIDER, J.K., R.D., OVENS, TUTOLO, REED, PRESSER, BAMBIC, and ROBERTSON met with their clients in person or arranged for others to meet with their clients on their behalf to collect gambling winnings or pay-off losses.

OVERT ACTS

  33. In furtherance of the conspiracy, and to effect and conceal the existence of the conspiracy, the following overt acts were committed by the below-listed persons, in the Northern District of Ohio, Eastern Division, and elsewhere:

  34. On or about July 29, 2015, PPH created "1redzonebet.com" to allow R.D.'s clients to make wagers and bet on sporting events.

  35. On or about September 29, 2016, R.D. made a payment of approximately $10,000 to PPH.

  36. On or about the same date, J.K. made a payment of approximately $5,000 to PPH.

  37. On or about the same date, OVENS made a payment of approximately $2,000 to PPH.

  38. On or about October 24, 2016, J.K. made a payment of approximately $1,975 to PPH.

  39. On or about November 27, 2016, R.D. made a payment of approximately $6,500 to PPH.

40. On or about December 8, 2016, J.K. made a payment of approximately $1,575 to PPH.

41. On or about January 26, 2017, R.D. made a payment of approximately $7,200 to PPH.

42. On or about February 22, 2017, OVENS made a payment of approximately $1,500 to PPH.

43. On or about April 15, 2017, R.D. made a payment of approximately $10,000 to PPH.

44. On or about that same date, J.K. made a payment of approximately $10,000 to PPH.

45. On or about that same date, REIDER made a payment of approximately $5,000 to PPH.

46. On or about August 10, 2017, R.D. made a payment of approximately $10,000 to PPH.

47. On or about February 5, 2018, ROBERTSON directed REIDER to clear several of his clients' account balances on the PPH website because he had arranged meetings with the clients to settle the balances.

48. On or about February 6, 2018, REIDER informed ROBERTSON that ROBERTSON owed REIDER approximately $2,700, which was REIDER's percentage of the profit derived from ROBERTSON's clients.

49. On or about February 7, 2018, ROBERTSON met REIDER and paid REIDER the approximately $2,700 ROBERTSON owed REIDER related to his gambling clients.

50. On or about May 9, 2018, REED met with PRESSER at PRESSER's home and collected approximately $3,546 for gambling losses incurred by PRESSER'S clients, which REED intended to share with REIDER.

51. On or about May 14, 2018, REIDER made a payment of approximately $5,500 to PPH.

52. On or about May 16, 2018, REED met REIDER at Giant Eagle located at 7960 Plaza Blvd., Mentor, Ohio and paid REIDER approximately $6,521 that REED owed REIDER.

53. On or about July 4, 2018, FOWLES contacted REIDER regarding a problem REIDER was having with the PPH website squareplays.com.

54. On that same date, PPH directed REIDER to send payments due to PPH to an address in Las Vegas, Nevada.

55. On or about July 20, 2018, BAMBIC requested that REIDER setup an account for a new client on the PPH website.

56. On or about August 28, 2018, TUTOLO purchased a $135.00 prepaid gift card from the Speedway gas station located at 7745 Reynolds Road, Mentor, Ohio 44060.

57. On or about that same date, TUTOLO contacted PPH via text message and provided the number from the above-mentioned prepaid gift card to make a payment on his PPH account.

58. On or about September 7, 2018, the prepaid gift card was processed through a Stripe Credit Card processing account belonging to ROBINSON'S business, Your Wine Cellars, in the amount of $134.91.

59. On or about September 4, 2018, FOWLES contacted OVENS to tell OVENS the balance due on OVENS' PPH account and requested payment.

60. On that same date, FOWLES provided OVENS with the address to address in Las Vegas, Nevada to send money orders for payment of his PPH fees.

61. On that same date, OVENS purchased two money orders from the 5815 Landerbrook Drive Post Office in the amounts of $1,000 and $500 using cash for payment of OVENS' PPH fees.

62. On or about September 12, 2018, the two above-mentioned money orders were deposited into a Wells Fargo business checking account in the name of PINIALIS.

63. On or about November 13, 2018, TUTOLO purchased a $50.00 prepaid gift card from the Speedway gas station located at 7745 Reynolds Road, Mentor, Ohio 44060.

64. On or about that same date, TUTOLO contacted PPH via text message and provided the number for the above-mentioned prepaid gift card to make a payment on his PPH account.

65. On or about November 17, 2018, the prepaid gift card was processed through a Stripe Credit Card processing account belonging to ROBINSON'S business, Your Wine Cellars, in the amount of $49.99.

66. On or about November 15, 2018, REIDER made a payment of approximately $5,500 to PPH.

67. On or about December 5, 2018, TUTOLO purchased a $195.00 prepaid gift card from the Speedway gas station located at 7745 Reynolds Road, Mentor, Ohio 44060

68. On or about that same date, TUTOLO contacted PPH via text message and provided the number from the above-mentioned prepaid gift card to make a payment on TUTOLO's PPH account.

69. On or about December 11, 2018, the prepaid gift card was processed through a Stripe Credit Card processing account belonging to ROBINSON'S business, Your Wine Cellars, in the amount of $194.91.

70. On or about June 7, 2019, BELLIPARIO met R.D. in Cleveland, Ohio to pick-up a payment of fees R.D. owed for use of the PPH website.

71. On or about June 17, 2019, R.D. contacted BELLIPARIO to re-negotiate fees for R.D.'s use of the PPH website. On that same date, BELLIPARIO directed R.D. to discuss the fee issue with FOWLES.

All in violation of Title 18, United States Code, Section 371.

### COUNT 2
(Prohibition of Illegal Gambling Business, 18 U.S.C. § 1955)

The Grand Jury further charges:

72. The allegations contained in paragraphs 1 – 28 are re-alleged and incorporated by reference in this count, as though fully restated herein.

73. From in or around January 2015 to in or around December 2019, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendants STEPHEN BELLIPARIO, aka TONY, JOSEPH FOWLES, aka MATT, AMIR HUGH ROBINSON, ANTHONY PINIALIS, CLINTON REIDER, THOMAS REED, JAMES OVENS, MICHAEL TUTOLO, MAUREY PRESSER, ALAN BAMBIC, and RALPH ROBERTSON, did conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving sports betting, which gambling business was a violation of the laws of the State of Ohio, that is, O.R.C. 2915.02(A)(1) and (A)(3), and which also involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of said illegal gambling business, and which remained in substantially continuous operation for a period in

excess of thirty days and had a gross revenue of $2,000.00 in any single day, in violation of Title 18, United States Code, Section 1955.

## COUNT 3
(Conspiracy to Launder Monetary Instruments, 18 U.S.C. § 1956(h))

74. The factual allegations contained in paragraphs 1-28, 32, 35-46, 51-54, 56-71 are re-alleged and incorporated by reference in this count, as though fully restated herein.

75. From in or around August 2017, to in or around August 2019, in the Northern District of Ohio, Eastern division, and elsewhere, Defendants STEPHEN BELLIPARIO, aka TONY, JOSEPH FOWLES, aka MATT, AMIR HUGH ROBINSON, ANTHONY PINIALIS, JAMES OVENS, and MICHAEL TUTOLO, did knowingly combine, conspire, and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States, in violation of Title 18, United States Code, Section 1956, to wit: knowingly conduct and attempt to conduct financial transactions affecting interstate commerce, which transactions involved the proceeds of specified unlawful activity, that are proceeds from operating an illegal gambling business, in violation of Title 18, United States Code, Section 1955, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), and all in violation of Title 18, United States Code, Sections 1956(h).

## FORFEITURE: COUNTS 1-2

The Grand Jury further charges:

76. The allegations of Counts 1 and 2 are hereby re-alleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 18, United States Code, Section 1955(d), and Title 28, United States

Code, Section 2461(c).  As a result of the foregoing offenses, Defendants STEPHEN BELLIPARIO, aka TONY, JOSEPH FOWLES, aka MATT, AMIR HUGH ROBINSON, ANTHONY PINIALIS, CLINTON REIDER, THOMAS REED, JAMES OVENS, MICHAEL TUTOLO, MAUREY PRESSER, ALAN BAMBIC, and RALPH ROBERTSON shall forfeit to the United States: (i) all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses; and, (ii) all property, including money, used in violation of the provisions of Title 18, United States Code, Section 1955; including, but not limited to, the following:

    a.)    $3,861.00 U.S. Currency recovered at defendant CLINTON REIDER's Mentor-On-The-Lake, Ohio, residence on March 22, 2017, pursuant to the execution of a search warrant.

    b.)    $65,717.00 U.S. Currency recovered at defendant JAMES OVENS' Willoughby Hills, Ohio, residence on August 8, 2019, pursuant to the execution of a search warrant.

    c.)    $32,154.00 U.S. Currency recovered at defendant THOMAS REED's Kirtland Hills, Ohio, residence on December 5, 2018, pursuant to the execution of a search warrant.

FORFEITURE: COUNT 3

The Grand Jury further charges:

77.    The allegations of Count 3 are hereby re-alleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(1).  As a result of the foregoing offense, Defendants STEPHEN BELLIPARIO, aka TONY, JOSEPH FOWLES, aka MATT, AMIR HUGH ROBINSON, ANTHONY PINIALIS, CLINTON REIDER, THOMAS REED, JAMES OVENS, and MICHAEL TUTOLO shall forfeit

to the United States all property, real and personal, involved in such offense, and all property traceable to such property.

A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.